CRAIG A. GELFOUND (SBN 176378)
MICHAEL G. OLEINIK (SBN 181163)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:	213.629.7400
Facsimile:	213.629.7401
Email:	craig.gelfound@arentfox.com
	michael.oleinik@arentfox.com

DANA J. FINBERG (SBN 257459)
JEFF LEUNG (SBN 310960)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA  94105
Telephone:	415.757.5500
Facsimile:	415.757.5501
Email:	dana.finberg@arentfox.com
	jeff.leung@arentfox.com

Attorneys for Defendant/Counterclaimant
Bridgelux, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Everlight Electronics Co., Ltd.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Bridgelux, Inc.,<br><br>　　　　　　　　Defendant. | Case No.  4:17-cv-03363-JSW<br><br>**DEFENDANT AND COUNTERCLAIMANT BRIDGELUX, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Complaint Filed:  June 10, 2017<br>Answer/Counterclaim Filed: July 6, 2017<br>Judge:  Hon. Jeffrey S. White, Courtroom 5 |
| Bridgelux, Inc.,<br><br>　　　　　　　　Counterclaimant,<br><br>v.<br><br>Everlight Electronics Co., Ltd., and Everlight Americas, Inc.,<br><br>　　　　　　　　Counterdefendants. | |

# TABLE OF CONTENTS

**Page**

I.   **INTRODUCTION** ..................................................................................................1

II.  **TECHNOLOGY AND ASSERTED PATENTS** ................................................2

III. **APPLICABLE LAW** ...........................................................................................3

   Proper Claim Construction Focuses On The Intrinsic Evidence: The Patent Claims Themselves, The Patent Specification, And The Prosecution History ................3

IV.  **DISPUTED CLAIM CONSTRUCTIONS AT ISSUE** ......................................5

   1. "the aspect ratio of the active area is between approximately 1.5 to 1 and approximately 10 to 1" ....................................................................5

   2. "transparent" ................................................................................................7

   3. "mounted directly to the reflective surface" / "mounting . . . directly to the reflective surface" ..............................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013) ................................................................................................4

*Bridgelux, Inc. v. Cree, Inc.*,
  Case No. 9:06-cv-00240-KFG (E.D. Tx. June 3, 2008) ............................................................8

*Graco Children's Products, Inc. v. Regalo Int'l, LLC.*,
  23 C.C.P.A. 75, 77 F.2d 660 (E.D. Penn 1999) ........................................................................8

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................................................4

*Intel Corp. v. VIA Techs., Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003) ................................................................................................4

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ..................................................................................................7

*K–2 Corp. v. Solomon S.A.*,
  191 F.3d 1356 (Fed. Cir. 1999) ...........................................................................................4, 7

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
  147 F.Supp.2d 464 (W.D. Va.2001) .........................................................................................8

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ................................................................................................6

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .......................................................................3, 4, 9

*Teleflex Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ............................................................................................4, 9

*Thorner v. Sony Computer Entertainment America LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................5, 8

*Verizon California Inc. v. Ronald A. Katz Technology Licensing, P.A.*,
  326 F.Supp.2d 1060 (C.D. Cal. 2003) ......................................................................................8

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ..................................................................................................5

## I. INTRODUCTION

Bridgelux, Inc. ("Bridgelux") is an innovator and manufacturer of high performance, energy efficient, cost effective and easy to integrate solid-state lighting solutions. Bridgelux has successfully resolved some of the most difficult technical challenges to commercializing LED lighting for consumer use. As a result, Bridgelux has been recognized as an innovator and has been awarded numerous patents on its cutting-edge technology. Some of the most innovative inventions by Bridgelux are covered in the four Bridgelux patents at issue in this case.

On June 10, 2017, Everlight Electronics Co., Ltd. ("Everlight") commenced this patent infringement suit against Bridgelux, asserting U.S. Patent Nos. 6,335,548 ("the '548 Patent") and 7,253,448 ("the '448 Patent") (collectively the "Everlight Patents"). However, the Everlight Patents do not involve technology developed by Everlight itself; instead, it acquired rights to nine patents in 2016 from a third party. (*See* Everlight Electronics Co.'s First Amended Complaint for Patent Infringement, ECF No. 68, at ¶ 11, an excerpt of which is attached to the accompanying Declaration of Jeff Leung ("Leung Decl.") as Exhibit 1.)

In addition to responding to Everlight's meritless attack, Bridgelux learned of Everlight's pervasive infringement of Bridgelux's innovations and filed a counterclaim against Everlight and its American subsidiary, Everlight Americas, Inc. ("Everlight Americas"), asserting U.S. Patent Nos. 8,567,988 ("the '988 Patent"), 6,869,812 ("the '812 Patent"), 8,256,929 ("the '929 Patent"), and 8,092,051 ("the '051 Patent") (collectively the "Bridgelux Patents" and, together with the Everlight Patents, the "Patents-in-Suit").[1]

At this stage of claim construction, the parties dispute the meaning of nine terms from the Patents-in-Suit. Three of the nine terms are found in the Bridgelux Patents, which are addressed in this opening brief.

Bridgelux's proposed constructions are grounded in the intrinsic record of the Bridgelux Patents and consistent with the scope of the claims. Bridgelux's claim constructions adhere to established case law. Bridgelux proposes the disputed claim terms from the Bridgelux Patents be

---

[1] The '988, '812, '929, and '051 Patents are attached to the Leung Decl. as Exhibits 2-5, respectively.

given their full scope consistent with their ordinary meanings because the meanings of the claim terms are readily apparent and require nothing more than application of commonly understood words.

By contrast, Everlight's proposed constructions are unsupported by the intrinsic record and inconsistent with the plain language of the claims. Everlight's constructions improperly seek to import limitations into the claims. Everlight's constructions also create uncertainty, redundancy and are inconsistent with the ordinary meanings of the claim terms. At bottom, Everlight attempts to advance its non-infringement positions by offering strained, litigation-driven constructions. Accordingly, and for the reasons set forth more fully below, Bridgelux respectfully submits that the Court should adopt Bridgelux's proposed construction for each disputed term.

## II. TECHNOLOGY AND ASSERTED PATENTS

Since 2002, Bridgelux has invested in research and development to address some of the inherent deficiencies of LEDs that impact the wide spread adoption of LEDs as a replacement technology for traditional lighting. The Bridgelux Patents were awarded to Bridgelux for its innovative work in connection with LED lighting technology that overcomes the optical power and efficiency limitations of conventional LEDs to provide increased illumination.

LED efficiency can be adversely affected by heat generated within the device itself. The reason for lower efficiency caused by heat is due to temperature rises in the LED chip. Higher operating temperatures not only degrade the light output efficiency, but also substantially reduce the life of the LED. (*See* '812 Patent, Specification at Col. 2, ll. 6-15.) In addition, heat generated within the device limits the amount of electrical power that can be used to drive an LED, and results in a limitation on maximum output optical power from an LED because the amount of light that can be generated is roughly proportional to the input electrical power. (*See id.* at Col. 1, l. 66-Col. 2, l. 5.)

Aside from efficiency loss from heat generation (or, conversely, the lack of thermal dissipation), performance may be impacted by the amount of light that escapes. When light is generated in an LED, some light escapes easily from the LED chip and some light does not, depending on the angle at which the light impinges upon the interface between the LED and the

outside media. Light inside the LED may be reflected back to the LED when the angle of incidence is greater than a critical angle. The reflected light then bounces inside the LED until it finds a way out or is absorbed. The light intensity attenuates due to absorption in the bulk material. (*See id.* at Col. 1, l. 60-Col. 3, l. 11.)

The Bridgelux Patents provide innovative solutions to these issues. In particular, the '812 Patent is directed to a LED chip that maintains a large active area with an elongated, or rectangular, geometry. The large active area increases the illuminance and enhances the heat dissipation of the device. The elongated geometry provides a shorter path for light trapped in the device to escape through the elongated sides and, thereby, provides less loss of light through absorption in the device, resulting in a device with increased brightness and efficiency with respect to conventional LED devices.

Similarly, the '988, '929, and '051 Patents, which are from the same family of patents,[2] were awarded to Bridgelux for its innovative technology that further increased light output from the LED device. These patents are directed to multiple LED chips mounted onto a metal substrate having a reflective surface. The reflective surface helps redirect light emitted from the LED chips that might otherwise be absorbed by the substrate. In addition, the multiple LED chips mounted directly to the reflective surface of the metal substrate provide improved thermal dissipation.

### III. **APPLICABLE LAW**

**Proper Claim Construction Focuses On The Intrinsic Evidence: The Patent Claims Themselves, The Patent Specification, And The Prosecution History.**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citations omitted). To that end, a court's "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out and distinctly claim the subject matter which the

---

[2] The '988, '929, and '051 Patents all derived from the same application and share a common specification. The '988 Patent issued from application No. 12/240,011. The '929 Patent is a continuation of application No. 12/848,484, which issued as the '051 Patent. The '051 Patent is a division of application No. 12/240,011, which issued as the '988 Patent.

patentee regards as his invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (internal quotations and citations omitted).

Courts cannot rewrite claims, but must "give effect to the terms chosen by the patentee." *K–2 Corp. v. Solomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) (citation omitted).

Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (citations omitted). A person of ordinary skill in the art ("POSITA") "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. To determine this meaning, "the court starts the decision making process by reviewing the same resources as would that person, viz., the patent specification and prosecution history." *See id.* Typically, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314.

After reviewing the patent claim itself, if the term remains unclear, a court may look to the patent specification, which "is the single best guide to the meaning of a disputed claim term," and "[u]sually, it is dispositive." *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). However, "one of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1320 (citation omitted).

A court may also consider the patent's prosecution history if it is in evidence. *See Phillips*, 415 F.3d at 1317 (citation omitted). "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Any disavowal of claim scope during prosecution must be clear and unmistakable. *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013).

If the analysis of the intrinsic evidence fails to resolve any ambiguity in the claim language, a court then may turn to extrinsic evidence, such as expert declarations and testimony from the inventors. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on

extrinsic evidence to contradict the meaning so ascertained."). When considering extrinsic evidence, a court should take care not to use it to vary or contradict the claim terms. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

### IV.   DISPUTED CLAIM CONSTRUCTIONS AT ISSUE

1. **"the aspect ratio of the active area is between approximately 1.5 to 1 and approximately 10 to 1"**

| Claim term (Patent No./Asserted Claim No.) | Bridgelux, Inc.'s Proposed Claim Construction |
|---|---|
| "the aspect ratio of the active area is between approximately 1.5 to 1 and approximately 10 to 1" ('812 Patent/Claim 3 of the '812 Patent) | No construction necessary. |

Bridgelux proposes that this term should be given its full scope consistent with the plain and ordinary meaning of the term because nothing in the patent or its prosecution history indicates that this term should be interpreted in any way other than its plain and ordinary meaning. *See Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365-68 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

Everlight proposes that this term should be construed as "the ratio of length to width is within the range of ratios from slightly less than 1.5 to 1 to slightly greater than 10 to 1; the endpoints 1.5 to 1 and 10 to 1 are included within the range." (Joint Claim Construction and Prehearing Statement Pursuant to Patent Local Rule 4-3 ("Joint Statement"), ECF No. 113, at 4, attached to the Leung Decl. as Exhibit 6.) In the field of LEDs, "aspect ratio" and "between approximately 1.5 to 1 and approximately 10 to 1" have meanings that were, and remain, well-known to persons of ordinary skill in the art.

To be clear, Everlight expressly identified the term as it appears in claim 3 of the '812 Patent. (*See* Joint Statement at 1 ("This term appears in claim 3 of Bridgelux's '812 Patent. The particular issue for construction is whether the ratios at the endpoints of the range – 1.5 to 1 and 10 to 1 – are included or excluded from the range.").) However, variations of the term – such as

"approximately 1.5 to 1," "approximately 2 to 1", or "approximately 4 to 1" appear in other claims and Everlight does not dispute those terms. That these terms appearing in claims other than claim 3 do not require construction, as implicitly admitted by Everlight, belies Everlight's contention that the term in claim 3 requires construction. This term should be accorded its plain and ordinary meaning consistent with the other claims in the '812 Patent.

The specification repeatedly explains that the "aspect ratio" relates to the dimensions of the sides of the LED chip: "Some contemporary designs may have different geometry, but the dimensions of the sides are approximately similar, i.e., the aspect ratio between the two sides of a contemporary LED is approximately 1." (*See* '812 Patent, Specification at Col. 2, ll. 31-38.) The specification also explains that "the present invention comprises a light emitting diode chip . . . having an aspect ratio which defines an elongated geometry, . . . ." (*See id.* at Col. 4, ll. 28-32.) Furthermore, a preferred embodiment confirms that the sides to be measured are the LED chip width and length. (*See id.* at Col. 6, ll. 52-54.)

Everlight's proposed construction suffers from several flaws. First, Everlight's proposed construction creates ambiguity in claim terms that are clear and definite. Specifically, Everlight's proposed construction of "within the range of ratios from slightly less than 1.5 to 1 to slightly greater than 10 to 1" is confusing compared to the easily-understood claim language of "between approximately 1.5 to 1 and approximately 10 to 1," making Everlight's proposed construction a difficult term for a jury to understand. Everlight's proposed construction also unnecessarily and arbitrarily redefines the ordinary meaning of "approximately" to "slightly less" and "slightly greater," which is vague and unlikely to be helpful to the trier of fact. The specification never references "slightly less" or "slightly greater"; whereas "approximately" is commonly understood and has a well-known meaning. *See, e.g.*, *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,

395 F.3d 1364, 1372 (Fed. Cir. 2005) (identifying "approximately" as the "ordinary and accepted meaning" of "about").

Second, nothing in the intrinsic record suggests that Bridgelux intended to define the term differently from its plain and ordinary meaning. There is a "heavy presumption" that a claim term carries its "ordinary and customary meaning," and any party seeking to convince a court that a term has some other meaning "must, at the very least, point to a term or terms in the claim with which to draw in [statements in the written description that affect the patent's scope]." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) (internal quotations and citations omitted). Everlight fails to identify anything from the intrinsic evidence that clearly and deliberately sets forth a different meaning or that the use of "the ordinary and accustomed meaning ... would deprive the claim of clarity . . . ." *See K–2 Corp.*, 191 F.3d at 1363.

This Court should reject Everlight's proposed construction and apply the plain and ordinary understanding of the term "the aspect ratio of the active area is between approximately 1.5 to 1 and approximately 10 to 1."

### 2. "transparent"

| Claim term (Patent No./Asserted Claim No.) | Bridgelux, Inc.'s Proposed Claim Construction |
|---|---|
| "transparent" ('812 Patent/Claims 1, 2, and 3 of the '812 Patent) | No construction necessary. |

Bridgelux proposes that this term be given its full scope consistent with the plain and ordinary meaning of the term. Nothing in the intrinsic record suggests that Bridgelux intended to define the term differently from its plain and ordinary meaning. Moreover, this term is commonly used in the English language, which the jury will readily understand in the context of the surrounding claim language. Construction of the term "transparent" is unnecessary.

Everlight proposes that the term "transparent" should be construed as "allowing light to pass through almost undisturbed, such that one can see through it clearly." (Joint Statement, ECF No. 113, at 4.)

"Transparent," in the context of the claims in the '812 Patent, clearly does not diverge from its plain and ordinary meaning.

Moreover, the specification does not include any special, limiting definition for the term "transparent" that would support Everlight's construction. As the Federal Circuit explained in *Thorner*: "the patentee must clearly express an intent to redefine the term." 669 F.3d at 1365 (internal citations omitted and emphasis added). Everlight does not and cannot cite any clearly expressed intent in the specification or prosecution history that shows that "transparent" should be redefined to "allowing light to pass through almost undisturbed, such that one can see through it clearly." Indeed, in Everlight's citations to intrinsic evidence in the parties' Joint Statement, nothing supports its proposed construction for "transparent"; nor do any of its citations to the specification even reference the term "transparent." (*See, e.g.*, ECF No. 113 at 4 (citing '812 patent 2:48-50, 2:62-67, 3:44-47, 5:29-33, 6:31-34, 9:60-64, 10:19-24).)

To the extent the Court determines it is necessary to resort to extrinsic evidence, a prior claim construction order, cited by Everlight, from a district court outside of this Circuit is not binding on this Court. *See Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F.Supp.2d 464 (W.D. Va.2001); *Graco Children's Products, Inc. v. Regalo Int'l, LLC.*, 23 C.C.P.A. 75, 77 F.2d 660 (E.D. Penn 1999); *see also Verizon California Inc. v. Ronald A. Katz Technology Licensing, P.A.*, 326 F.Supp.2d 1060, 1069 (C.D. Cal. 2003). Moreover, this Court should not defer to the prior claim construction order because the court in the Eastern District of Texas, in construing the term "transparent," effectively and errantly imported the limitation "substantially" into its construction of the term. That is, the accused infringer Cree, Inc., contended that "transparent" should simply be

understood to mean "allowing light to pass through." *See Bridgelux, Inc. v. Cree, Inc.*, Case No. 9:06-cv-00240-KFG, ECF No. 176 at 13 (E.D. Tx. June 3, 2008), an excerpt of which is attached to the Leung Decl. as Exhibit 7. However, by adding "almost undisturbed, such that one can see through it clearly," the court imported the limitation "substantially" into its construction of "transparent" and, therefore, Everlight's proposed construction is of the term "substantially transparent" rather than "transparent."

Bridgelux respectfully requests that the Court reject Everlight's limiting proposed construction and give this term its plain and ordinary meaning. To the extent the Court is inclined adopt the interpretation promulgated by the District Court in Eastern District of Texas in the Cree litigation, the Court should find that "allowing light to pass through almost undisturbed, such that one can see through it clearly" is the construction for "substantially transparent."

3. **"mounted directly to the reflective surface" / "mounting . . . directly to the reflective surface"**

| Claim term (Patent No.) | Bridgelux, Inc.'s Proposed Claim Construction |
|---|---|
| "mounted directly to the reflective surface" / "mounting . . . directly to the reflective surface" ('929 and '051 Patents/Claims 1, 3, and 5 of the '929 Patent and Claims 1 and 5 of the '051 Patent ) | "mounted/mounting directly to the reflective surface by adhesive or other means with no intervening elements present" |

Bridgelux proposes that this term be given its full scope consistent with the plain and ordinary meaning of the term in view of the patent and its prosecution history.

The "'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. A patentee deviates from the plain and ordinary meaning only when there is a "clear disavowal" of claim scope. *Teleflex*, 299 F.3d at 1327. The specification uses this term consistent with its plain and ordinary meaning: "when an element is referred to as being 'directly on' another element, there are no intervening elements present." (*See,*

*e.g.*, '929 Patent, Specification at Col. 3, ll. 35-37.) The prosecution history further confirms this plain and ordinary meaning.

Everlight proposes that the term "mounted directly to the reflective surface" / "mounting . . . directly to the reflective surface" should be construed as "mounted to the reflective surface with no intervening elements present." (Joint Statement, ECF No. 113, at 3.) While Everlight's proposed construction is consistent with the plain and ordinary meaning of the term, Everlight implicitly argues, as contended in its invalidity contentions, that an adhesive is an "intervening element." (*See* Everlight Electronics' And Everlight Americas' Patent L.R. 3-3 And 3-4 Disclosure Of Invalidity Contentions And Disclosure Of Document Production Accompanying Invalidity Contentions at 49-50, an excerpt of which is attached to the Leung Decl. as Exhibit 8.)

However, this argument is contrary to the specification and prosecution history. The specification explains that an "element" is a region, layer, section, or substrate of a LED apparatus. (*See, e.g.*, *id.* at Col. 3, ll. 19-24, ll. 32-35.) A "region, layer, section or substrate" of an LED apparatus, however, does not include the "adhesive" that holds the "regions, layers, sections, and substrates" together. This distinction is explicit in the specification:

> Since there are no electrical connections in contact with the mounting surface 112 of the LED chip 100, it can be mounted *directly* to a metal substrate without the need for an insulating dielectric. [Col. 4:44-47] (emphasis added). By mounting the LED chip 100 *directly* on a metal substrate, an efficient thermal path is created (as indicated by the arrow 116) to allow heat to pass from the LED chip 100 to the metal substrate.

(*See, e.g.*, *id.* at Col. 4, ll. 50-59 (emphasis added).) The specification further states that "any suitable adhesive may be used to mount the LED chip 100 to the substrate." (*See, e.g.*, *id.* at Col. 4, ll. 46-47.) The specification teaches that an LED chip having electrical contacts on the top surface may be "directly mounted" to the substrate using an adhesive, thereby eliminating the need for any intervening elements, such as a dielectric that would attenuate heat dissipation for the LED device. Accordingly, when the term is given its plain and ordinary meaning in view of the

specification and prosecution history, it means "mounted / mounting directly to the reflective surface by adhesive or other means with no intervening elements present."

A construction which reads the preferred embodiment out of the scope of the claims would be at odds with the intention of the patentee as expressed in the specification. *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1371 (Fed.Cir.2010) (refusing to read out preferred embodiment when patent-at-issue included only two embodiments). If the Court were to adopt Everlight's argument, the claim would no longer read on a preferred embodiment, violating this principle of claim construction.

The term "mounted directly to the reflective surface" / "mounting . . . directly to the reflective surface" should be construed as "mounted / mounting directly to the reflective surface by adhesive or other means with no intervening elements present."

Dated: August 3, 2018  **ARENT FOX LLP**

By: */s/ Craig A. Gelfound*
CRAIG A. GELFOUND
MICHAEL G. OLEINIK
DANA J. FINBERG
JEFF LEUNG
Attorneys for Defendant/Counterclaimant
BRIDGELUX, INC.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court's CM/ECF system which will provide notice on all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service have been served with a true and correct copy of the foregoing document by mail on this day.

Dated: August 3, 2018

*/s/ Craig A. Gelfound*
Craig A. Gelfound